# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TERENCE LAMONT JOHNSON,

        Defendant-Appellant.

UNPUBLISHED
July 12, 2016

No. 326201
Wayne Circuit Court
LC No. 14-007193-FH

Before: JANSEN, P.J., and FORT HOOD and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of possession with intent to deliver cocaine, MCL 333.7401(2)(a)(iv) (less than 50 grams), possession with intent to deliver marijuana, MCL 333.7401(2)(d)(iii) (less than five kilograms), felon in possession of a firearm, MCL 750.224f, possession of a firearm during the commission of a felony, MCL 750.227b (felony-firearm), and carrying a concealed weapon, MCL 750.227. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 2 to 10 years' imprisonment for the possession with intent to deliver cocaine conviction, 1 to 10 years' imprisonment for the possession with intent to deliver marijuana conviction, 2 to 10 years' imprisonment for the felon in possession of a firearm conviction, 2 years' imprisonment for the felony-firearm conviction, and 2 to 10 years' imprisonment for the carrying a concealed weapon conviction, with 34 days of credit for time served. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Detroit Police officers responded to a complaint of narcotics activity at 13826 Gallagher in Detroit, Michigan on August 6, 2014. As officers approached the house, defendant leaped out of a window and fell to the ground. A concealed, loaded handgun was found on defendant's person, as well as a baggie containing three packets of cocaine, five packets and two bags of marijuana, and $1,224 in small denominations. Defendant did not possess a license to carry a concealed pistol.

-1-

At trial, one of the police officers testified that the house was empty of furniture and appliances and that no other drugs or drug paraphernalia were found inside the house. Defendant testified that he was at the house that day to purchase a "Bridge" card[1] from a woman who lived in the house. He denied possessing any firearms or narcotics and denied selling drugs. He testified that he had planned to use the money in his possession to pay for repairs to his car. He further testified that he used a wireless headset to call his friend, Jamar Johnson, while he was being detained.

Johnson testified that he received a call from defendant on August 6, 2014, during which he heard multiple voices in the background. Defense counsel attempted to introduce testimony from Johnson and possibly another witness (not identified in the record) about statements they overheard on the telephone call. However, the prosecution objected to the proposed testimony as inadmissible hearsay. Defense counsel responded that the evidence was to be offered as a present sense impression. The trial court ruled that neither Johnson nor any other witnesses who heard the telephone conversation would be allowed to testify to what they heard, except to say there was a commotion or more than one voice.

Defense counsel submitted photographs of the home taken a week before the trial that showed furniture in the living room and a table in the kitchen.

The jury convicted defendant as described above. This appeal followed.

## II. EXCLUSION OF HEARSAY EVIDENCE

Defendant first argues that the trial court erred in excluding the testimony of Johnson and any other witnesses concerning statements heard on the call between Johnson and defendant. We disagree.

We review a trial court's decision to admit or deny evidence for an abuse of discretion. *People v Orr*, 275 Mich App 587, 588; 739 NW2d 385 (2007). "A trial court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *Id*. at 588-589. We review de novo preliminary questions of law, such as the interpretation of a pertinent rule of evidence. *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014).

Defendant sought to introduce the testimony of Johnson, and possibly another identified witness, regarding statements they heard in the background while on the telephone with defendant during the incident at the house. Defendant does not argue that the proposed testimony was not hearsay, i.e., a statement, other than the one made by the declarant while testifying at a hearing or trial, offered in evidence to prove the truth of the matter asserted. MRE 801(c). Hearsay is inadmissible unless permitted under a specific exception. *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). Defendant instead argues that the proposed testimony was admissible under the "present sense impression" exception to the hearsay rule.

---

[1] A card providing food assistance and/or cash benefits.

Under MRE 803(1), a hearsay statement is admissible if it describes or explains "an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Three conditions must be met for the admission of hearsay evidence as a present sense impression: "(1) the statement must provide an explanation or description of the perceived event, (2) the declarant must personally perceive the event, and (3) the explanation or description must be 'substantially contemporaneous' with the event." *People v Hendrickson*, 459 Mich 229, 236; 586 NW2d 906 (1998), quoting *United States v Mitchell*, 145 F3d 572, 576 (CA 3, 1998).

At trial, defense counsel asserted that the proposed testimony was offered to show that the witnesses "heard other people in the background" because defendant "maintained that he was not arrested by himself." In this regard, the trial court properly permitted defendant to introduce testimony that the witnesses heard a commotion or more than one voice. But defense counsel did not specifically identify statements that he sought introduce. Defendant therefore did not demonstrate to the trial court that the present sense impression exception applied to the proposed testimony.

Nevertheless, defendant argues that all statements the witnesses allegedly heard on the telephone should have been admitted as the present sense impressions of persons in the Gallagher house at the time of the raid. Again, the trial court allowed the witnesses to testify that they heard multiple voices on the phone. Without specific identification of the proposed testimony, including who made the statements, we cannot determine whether the statements themselves provided an explanation or description of the perceived event so as to qualify them as present sense impressions. See *Hendrickson*, 459 Mich at 236; *People v Chelmicki*, 305 Mich App 58, 62-63, 850 NW2d 612 (2014). Because defendant offered no such specifics regarding the proposed statements, we conclude that the trial court did not abuse its discretion in denying their admission. *Orr*, 275 Mich App at 588.

## III. PROSECUTORIAL ERROR[2]

Defendant also argues that he was denied a fair trial by the prosecution's improper questioning concerning defendant's other crimes, assertion that defendant commits federal offenses, and introduction of facts that were not in evidence. We disagree.

Where issues of prosecutorial error are preserved, we review them de novo to determine whether the defendant was denied a fair and impartial trial. *People v Thomas*, 260 Mich App 450, 453; 678 NW2d 631 (2004). Defendant failed to object to most of the prosecution's allegedly erroneous questions and statements; therefore, we review the unpreserved issues of

---

[2] We recently held in *People v Cooper*, 309 Mich App 74, 87–88; 867 NW2d 452 (2015), that the term "prosecutorial error" is preferred over the more commonly used phrase of "prosecutorial misconduct," which should be reserved for only the most extreme cases when a prosecutor's conduct violates the rules of professional conduct or constitutes illegal conduct. See also *People v Bosca*, 310 Mich App 1, 25–26; 871 NW2d 307 (2015). Accordingly, we will adopt this same convention in the instant case.

prosecutorial error for plain error affecting defendant's substantial rights. *Id*. "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). Further, reversal is unwarranted where a curative instruction could have alleviated any prejudicial effect. *Id*. at 329-330.

Issues of prosecutorial error are reviewed on a case-by-case basis and the remarks examined in context to determine whether the defendant was deprived of his right to a fair trial. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). "The propriety of a prosecutor's remarks depends on all the facts of the case." *People v Rodriguez*, 251 Mich App 10, 30; 650 NW2d 96 (2002). The prosecution's comments must be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial. *People v Brown*, 267 Mich App 141, 152; 703 NW2d 230 (2005). "Otherwise improper prosecutorial conduct or remarks might not require reversal if they address issues raised by defense counsel." *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007). The prosecution may not make a factual statement to the jury that is not supported by the evidence, *People v Ackerman*, 257 Mich App 434, 450; 669 NW2d 818 (2003), but is free to argue the evidence and all reasonable inferences arising from the evidence as they relate to a theory of the case, *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995).

Defendant first claims that the prosecution's questions and closing argument regarding his purchase of a Bridge card were improper because they concerned a collateral crime that was unrelated to the charged offenses. During its cross-examination of defendant, the prosecution posed the following questions:

> *Q*. And, do you routinely buy Bridge Cards from people?
>
> *A*. No, not—not normally. It was just that she called me—
>
> *Q*. (Interposing) So, you've done it more than once?
>
> *A*. Yes, I have.
>
> *Q*. And you understand that that's a crime to buy somebody's Bridge Card?
>
> *A*. Oh, yes.

Further, during closing argument, the prosecution stated:

> I mean, he's told you in his own words that he, he commits crimes. I mean, if he's going to say he's buying Bridge Cards, that's a felony too, and that's a Federal offense. So he knows. He knows what's about to happen. So he bails out the window and he jumps and he hits the fence.

This questioning and argument was permissible in light of defendant's trial testimony and theory of the case. Defendant denied being at the house for the purpose of selling drugs; rather, defendant testified that he was there to purchase a Bridge card, which he knew was illegal. The

-4-

prosecution was not seeking to admit new evidence of defendant's other acts under MRE 404(b). Instead, the prosecution's questioning and argument were directly related to the evidence that defendant presented at trial and to defendant's theory of the case. The prosecution addressed the defense theory in cross-examining defendant and commented on it during closing argument. We find no plain error in the prosecution's questions or argument regarding the Bridge card. *Callon*, 256 Mich App at 329. Further, even if the prosecution questions and argument were improper, defendant would not be entitled to relief. After closing arguments, the trial court instructed the jury that the attorneys' statements and arguments were not evidence and that their questions to the witnesses were also not evidence. The trial court further instructed the jury that it should only consider the admissible evidence in deciding the case. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

Second, defendant claims that the prosecution erred in its closing argument remarks regarding drug distribution procedure and the status of the home as a known drug location. We conclude that the allegedly erroneous remarks do not constitute error requiring reversal. The prosecution is permitted to argue facts in evidence and all reasonable inferences arising from the evidence as they relate to a theory of the case. *Bahoda*, 448 Mich at 282. In this case, the prosecution's comments were supported by the evidence, and reasonable inferences therefrom, and related to the prosecution's theory of the case. Two officers testified that they were at the house because of a "narcotics complaint" and that the house was one of the "known vacant narcotics locations." The evidence reflected that the drugs found at the scene were packaged into small amounts and that the cash found was in numerous, small bills. Officer Lamar Penn testified that the packaging and small denominations indicated narcotics sales. The prosecution's argument was thus based on the physical evidence, the testimony of the officers, and reasonable inferences from the facts. The prosecution used the facts about the packaging and money to advance its theory that defendant was involved in selling the drugs. There is no error in these comments. Furthermore, any prejudice from the prosecution's remarks regarding the drug distribution procedure was cured by the trial court's instruction to the jury that the arguments of the attorneys are not evidence. *Abraham*, 256 Mich App at 279.

Third, defendant argues that the prosecution erred in stating during closing argument that defendant's photographs did not depict the actual house where he was arrested. Unlike the other alleged errors, defense counsel objected to the prosecution's remark about the photographs. The trial court overruled the objection and permitted the prosecution to continue its argument. Therefore, we review this alleged error de novo to determine if defendant was denied a fair and impartial trial. *Thomas*, 260 Mich App at 453.

There was no reversible error in the prosecution's statement regarding the photographs. Regardless of whether the prosecution's assertion was correct, it was premised on a conflict in the evidence. At trial, defendant introduced photographs allegedly of the inside of the house, and testified that they were taken a week before the trial. Defendant testified that there were three other people at the house on the day of the incident and pointed out a photograph depicting a table where one of the three allegedly was sitting when the police arrived. In contrast, two police officers testified that there were no other people present, and that there was no furniture in the house, at the time of defendant's arrest. Again, the prosecution may not make a factual statement to the jury that is not supported by the evidence, *Ackerman*, 257 Mich App at 450, but

-5-

is free to argue the evidence and all reasonable inferences arising from the evidence as they relate to a theory of the case, *Bahoda*, 448 Mich at 282. The prosecution's remark questioning the validity of the photographs was based on the contradictory evidence regarding whether the house was furnished and whether other people were inside the house on the day in question. Further, it did not result in prejudice because the trial court instructed the jury that counsels' arguments were not evidence. *Abraham*, 256 Mich App at 279.

In sum, we conclude that the record does not show that the prosecution committed error that deprived defendant of this right to a fair and impartial trial.

## IV. DRUG PROFILE EVIDENCE

Defendant next argues that the trial court improperly admitted "drug profile" testimony from Penn and Detroit Police officer Jessica McDonald. We disagree.

Again, we review a preserved claim of evidentiary error for an abuse of discretion. *Orr*, 275 Mich App at 588. "A trial court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *Id*. at 588-589. However, because defense counsel's only objection was to the officers' testimony regarding the "street values" of the confiscated drugs, the majority of defendant's arguments on this issue were not properly preserved. We review unpreserved evidentiary issues for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764, 774; 597 NW2d 130 (1999). We review de novo preliminary questions of law, such as the interpretation of a pertinent rule of evidence. *Bynum*, 496 Mich at 623.

"Drug profile evidence has been described as an informal compilation of characteristics often displayed by those trafficking in drugs." *People v Murray*, 234 Mich App 46, 52; 593 NW2d 690 (1999) (citation and quotation marks omitted). In *Murray*, this Court stated that drug profile evidence is inherently prejudicial because it has the potential to suggest that innocuous events are indicative of criminal activity. *Id*. at 53. Consequently, most courts "have held that drug profile evidence is inadmissible as substantive evidence of guilt, because 'proof' of crime based wholly or mainly on these innocuous characteristics could potentially convict innocent people." *Id*. In effect, a witness is not permitted to testify that, "on the basis of the profile, [the] defendant is guilty," or to "compare the defendant's characteristics to the profile in a way that implies that the defendant is guilty." *People v Williams*, 240 Mich App 316, 321; 614 NW2d 647 (2000); see also *Murray*, 234 Mich App at 57. But drug profile testimony is admissible if it "aids the jury in intelligently understanding the evidentiary backdrop of the case, and the modus operandi of drug dealers," provided that it "stop[s] short" of commenting directly or substantively on a defendant's guilt. *Murray*, 234 Mich App at 56. The four factors helpful to determining the admissibility of drug profile evidence are (1) "the reason given and accepted for the admission of the profile testimony must only be for a proper use—to assist the jury as background or modus operandi explanation," (2) "the profile, without more, should not normally enable a jury to infer the defendant's guilt," (3) "courts must make clear what is and what is not an appropriate use of profile evidence," and (4) the expert "should not express his opinion, based on a profile, that the defendant is guilty, nor should he expressly compare the defendant's characteristics to the profile in such a way that guilt is necessarily implied." *Id*. at 57-58.

Here, defendant does not challenge the admissibility of the drug profile testimony on the basis that the Penn or McDonald not qualified to testify regarding the indicia of narcotics distribution. See *People v Williams*, 198 Mich App 537, 541-542; 499 NW2d 404 (1993). Rather, defendant argues that the drug profile testimony did not merely aid the jury in better understanding the evidence, but provided substantive evidence of his guilt.

As in *Murray*, we must look to the facts of the case to determine whether the drug profile evidence was admissible as a form of background or modus operandi evidence, or was inadmissible as involving the ultimate issue of defendant's guilt. *Murray*, 234 Mich App at 59. In the instant case, Penn testified that he found drugs, a handgun, and $1,224 on defendant. He also testified that the cocaine was packaged into three Ziploc bags and the marijuana into five Ziploc bags and two knotted bags. He stated that the amounts and packaging indicate that the drugs "would be for sale." Penn also testified to the street value of the drugs, stating that each packet had a value of $10 to $20. He noted that the money he retrieved was in the following denominations: 40 twenties, 19 tens, 26 fives, and 104 ones. Penn opined that the money "would be narcotic proceeds."

Penn's testimony was based on the packaging of the drugs and the denominations of the money and was provided to help the jury understand narcotics distribution and aid the jury in determining the issue of intent. The fact that Penn's testimony embraced the ultimate issue of intent did not render the expert testimony inadmissible drug profile evidence. See *Murray*, 234 Mich App at 59-60, 62-63 (holding that testimony about a general procedure for drug transactions and that the packaging of drugs found indicated an intent to sell was permissible drug profile evidence); see also *People v Ray*, 191 Mich App 706, 708; 479 NW2d 1 (1991) (holding that a police officer properly gave expert testimony that the quantity of crack cocaine in the defendant's possession, the manner the rocks of crack cocaine were evenly cut, and the street value of crack cocaine, indicated that the defendant intended to sell the drugs). Because Penn's testimony did not include an opinion that defendant was guilty or overtly relate otherwise innocent characteristics to defendant in order to establish his guilt, we find no error in its admission. *Murray*, 234 Mich App at 62-63.

Further, the prosecution did not use Penn's testimony for an impermissible purpose, but to help the jury understand the implications arising from the seizure of the items. This contrasts with *People v Hubbard*, 209 Mich App 234, 242-243; 530 NW2d 130 (1995), where the prosecution improperly argued to the jury that the drug profile evidence, which included many behaviors that were not themselves unlawful or directly related to the sale of narcotics, was circumstantial evidence of the defendant's guilt. *Id*. at 242-243. The prosecution in the instant case argued that the totality of the physical evidence recovered, namely the individually packaged drugs, the handgun, and the small denominations of cash found on defendant, supported the element of intent to deliver. Penn's testimony on the physical evidence recovered was insufficient, standing alone, for the jury to infer defendant's guilt, and the prosecution did not argue that the jury should make that inference from his testimony alone.

However, Penn also testified that the house was a known narcotics location. McDonald similarly testified that she had been to that house previously for a narcotics complaint. This testimony arguably implied defendant's guilt, suggesting that he was guilty of drug activity based on his mere presence at that location. See *Murray*, 234 Mich App at 63 (finding an

impermissible link of an innocuous drug profile characteristic to the defendant where an officer stated that the defendant's address was one of "certain areas within the city that are more prevalent or open dealing of drugs occur").

However, even if testimony concerning the house's status as a known narcotics location was admitted in error, the error was harmless. *Id*. at 64. When assessing a defendant's non-constitutional allegation of error, the test is "whether the prosecutor proved that it was highly probable that . . . the tainted evidence did not contribute to the verdict[]." *Id*. (quotations and citations omitted). Here, it is highly probable that the admission of certain parts of the officers' expert testimony, even if erroneous, did not affect the outcome of the case. There was direct evidence that defendant possessed the drugs and strong circumstantial evidence (such as the seized pre-packaged drugs, cash, and handgun) that he intended to sell the drugs. Further, defendant had more than one type of drug on his person. Additionally, no narcotics or paraphernalia were actually found inside the house; nor was defendant charged with any sort of constructive possession or operation of a drug house in relation to the house on Gallagher. Thus, we conclude, upon an examination of the entire record, that it is not highly probable that the statements concerning the house's status as a known narcotics location were outcome determinative. *Id*. In addition, although the court did not give the jury a limiting instruction on the proper use of drug profile evidence, the court did read an instruction on the proper use of police officer testimony. This instruction provided further protection for defendant from the danger of unfair prejudice.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant asserts that his trial counsel was ineffective for failing to request a jury instruction on the lesser included offense of simple possession. We disagree.

Generally, "[a] claim of ineffective assistance of counsel presents a mixed question of law and fact." *People v Brown*, 294 Mich App 377, 387; 811 NW2d 531 (2011). "This Court reviews a trial court's findings of fact, if any, for clear error, and reviews de novo the ultimate constitutional issue arising from an ineffective assistance of counsel claim." *Id*. However, because defendant failed to move for a new trial or an evidentiary hearing in the trial court, we review this unpreserved claim of ineffective assistance of counsel for errors apparent on the record. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008).

To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate "(1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014) (quotation marks and citation omitted). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). Decisions regarding what evidence to present, how to question witnesses, and whether to raise objections to procedures, evidence, or argument are presumed to be matters of trial strategy, and this Court will not second-guess counsel's strategic decisions, nor will we analyze counsel's competence with the benefit of hindsight. *People v Unger*, 278 Mich App 210, 242-243, 253; 749 NW2d 272 (2008); *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008).

An instruction on a lesser included offense "is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002). In other words, the greater offense must include all of the elements of the lesser offense. *People v Bearss*, 463 Mich 623, 627; 625 NW2d 10 (2001). Generally, it is impossible to commit the crime of possession with the intent to deliver without also having committed the crime of simple possession; therefore, possession is a necessarily included lesser offense of possession with intent to deliver. *People v Gridiron*, 185 Mich App 395, 400-401; 460 NW2d 908 (1990), amended 439 Mich 880 (1991); see *Cornell*, 466 Mich at 357. Consequently, the trial court would have been obliged to give an instruction on simple possession, if requested.

Given the record, however, we hold that defense counsel's failure to request an instruction on the necessarily lesser included offense of possession did not constitute ineffective assistance of counsel and does not require reversal. In this case, defense counsel may have decided not to request a lesser included instruction as a matter of trial strategy. *Unger*, 278 Mich App at 242-243.

The offense of possession with intent to deliver requires proof of more elements than does simple possession. See *People v Gridiron*, 190 Mich App 366, 368-369; 475 NW2d 879 (1991). In this case, extremely strong evidence supported the conclusion that defendant possessed the narcotics in question. The packaging of the narcotics and defendant's possession of a large amount of cash in small bills as well as an illegal handgun provided evidence that defendant possessed the cocaine and marijuana for sale. However, due to the relatively small number of separate packages, defense counsel may have believed the prosecution could not prove intent to deliver rather than possession of drugs for personal use. Although defendant's primary theory of the case was that he did not possess the drugs or firearms found on his person, defense counsel did make reference to the fact that a purchaser of narcotics for personal use would possess drugs "packaged for sale" although he lacked the intent to deliver them. If the prosecution had been unable to demonstrate defendant's intent to deliver, defendant would have been acquitted. However, it is extremely likely that he would have been convicted of simple possession in any case if that had been an option for the jury. We will not second-guess defense counsel's decision to pursue an "all or nothing" defense simply because it did not work. *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004).

Further, this trial strategy is distinguishable from that applied in *People v Stapf*, 155 Mich App 491; 400 NW2d 656 (1986), on which defendant relies for the proposition that the failure to request an instruction on a lesser included offense that is consistent with the evidence amounts to ineffective assistance of counsel. In *Stapf*, this Court remanded for further proceedings, in part for consideration of whether the defendant received ineffective assistance of counsel; the defendant was charged with kidnapping and his counsel argued that the defendant was guilty of nothing more than assault and battery but failed to request a jury instruction on that lesser offense. *Id*. at 499-500. Here, by contrast, defense counsel did not argue that defendant was guilty of only simple possession, notwithstanding a reference to a possible weakness in the use of drug packaging in proving intent to deliver; instead, the defendant's theory of the case was that defendant had never possessed the narcotics and firearm in question. Accordingly, counsel's failure to request the instruction on simple possession was not contrary to his theory of the case

and did not amount to representation that was below an objective standard of reasonableness. Moreover, defendant cannot establish that the trial court's failure to instruct the jury on simple possession likely affected the outcome of the case in light of the evidence that defendant possessed multiple narcotics in separate packages (including seven individual bags of marijuana and three bags of cocaine), a firearm, and a large amount of small-denomination bills. See *Douglas*, 496 Mich at 592. Therefore, we conclude that defendant has failed to demonstrate that he received ineffective assistance of counsel.

Affirmed.


/s/ Kathleen Jansen
/s/ Karen M. Fort Hood
/s/ Mark T. Boonstra